459 A.2d 1

COMMONWEALTH of Pennsylvania

v.

Charlie Will CLEMMONS, Appellant.

Superior Court of Pennsylvania.

Submitted March 24, 1982.

Filed March 11, 1983.

Reargument Denied May 20, 1983.

Petition for Allowance of Appeal Granted Nov. 16, 1983.

Marilyn C. Zilli, Assistant Public Defender, Harrisburg, for appellant.

William A. Behe, Deputy District Attorney, Harrisburg, for Commonwealth, appellee.

Before CERCONE, President Judge, and WICKERSHAM and ROWLEY, JJ.

CERCONE, President Judge:

This is a direct appeal by appellant, Charlie Will Clemmons, from a judgment of sentence entered after his conviction by a jury for murder of the first degree.[1] Post-verdict motions were denied and appellant was sentenced to life imprisonment. Now, on appeal, appellant is represented for the first time by counsel different from trial counsel. He presents for our review two challenges to the sufficiency of the evidence and nine allegations of ineffectiveness of trial counsel. We are able to reach the merits of the sufficiency arguments and two of the ineffectiveness contentions on the record as it presently exists. However, we vacate the judgment of sentence and remand this case for the conducting of an evidentiary hearing on the question of trial counsel's ineffectiveness as outlined by appellant in arguments three and four.[2]

The instant appeal arose out of the shotgun killing of one Dale Hershey by appellant on June 8, 1980. The shooting

---

**1.** 18 Pa.C.S.A. § 2502(a).

**2.** These allegations include:

3. Whether counsel rendered ineffective assistance in failing to pursue a number of different trial issues on appellant's behalf? These issues include: (1) the possibility of accidental discharge of the gun; (2) the possibility that appellant was unlawfully detained

occurred on interstate highway 81 near Harrisburg. By his own admission, it was the act of appellant, age thirty-one. Appellant was a long distance truck driver of large tractor trailer trucks. He was traveling north on I-81. Rose Marie Swelfer, the girlfriend of the victim, testified that the truck which appellant was driving made a sharp return to the lane in which the victim and she were traveling, thereby causing them to veer off the highway. This act upset Hershey, the driver, so much so that he activated his C.B. radio and addressed the following to the driver of the offending truck, who happened to be appellant. (There was no evidence that appellant and victim had ever seen each other prior to this incident.) "You son of a bitch, if you don't know how to drive that thing, you pull over and I'll show you how to drive it."

Both vehicles pulled off onto the shoulder of the highway with appellant's truck parked in front of Hershey's. Hershey, the victim, exited his small pick-up truck immediately and walked quickly to the cab of appellant's tractor trailer. Only Swelfer, the deceased Hershey's girlfriend, then witnessed both men walk to the back of the tractor trailer. She stated that Hershey's hands were at his sides and that the two men were exchanging remarks, but that she was unable to hear what they said. She then saw appellant lift a shotgun which he had carried from the cab, point it at Hershey, and fire. Hershey died almost immediately as a result of a wound in the lower neck area.

Appellant walked over to Swelfer, laid the gun in the grass, put his hands in the air "as if to say I'm not going to hurt you."

at the scene; (3) the possibility that appellant was subjected to unlawful one-on-one identifications; (4) the possibility of prior inconsistent statements by Commonwealth witnesses; (5) the possibility of locating witnesses who might have been favorable to the defense; (6) the possibility that the victim had such an aggressive personality that appellant was justified in fearing for his life.

4. Whether counsel rendered ineffective assistance in failing to exercise his right to discovery as to Commonwealth witness Phillip J. Kockler?

Passers-by stopped. When asked by one Phillip Kockler, a retired Pennsylvania State Police Officer, why he shot Hershey, appellant replied, "I told him to stop, he didn't stop and so I shot him." A John Scott testified that he heard appellant say several times, "Ain't nobody going to kill me" upon Scott's arrival on the scene.

One half hour after the shooting, appellant told Pennsylvania State Trooper Gibson that he pulled his truck off the road so that he could hit the other driver. Appellant stated that Hershey had his hand in his pocket and because appellant thought he might have a gun, he got his own shotgun from the back of his truck cab; and that Hershey told appellant as they got to the rear of the truck, "Just do what you have to because I am going to do what I have to do." It was at that point that appellant shot Hershey. No weapon was found on Hershey.

Appellant argues that the evidence was insufficient to convict him of murder in the first degree. He asserts that the evidence does not show that he acted with the requisite specific intent to kill Hershey, and that the element of malice was negated by his belief that he was in imminent danger of death.[3]

The task of the appellate court in reviewing the sufficiency claim is to determine whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which, if believed, the jury could probably have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted. *Commonwealth v. Williams*, 455 Pa. 539, 547, 316 A.2d 888, 892 (1974).

■ The law in Pennsylvania is clear that the deliberate use of a deadly weapon upon a vital area of the body of the ·

---

**3.** We note that this aspect of voluntary manslaughter based on an unreasonable apprehension of the threat of serious bodily harm, *Commonwealth v. Caye*, 465 Pa. 98, 348 A.2d 136 (1975); *Commonwealth v. White*, 492 Pa. 489, 424 A.2d 1296 (1981), was not presented to the jury by the court, at any rate. However, appellant has not raised this omission as error either as ineffectiveness of counsel for failing to request such a charge, or as error of the Court.

victim is sufficient to allow the jury to infer a specific intent to take life, absent any circumstances that might negate such an intention. *See Commonwealth v. O'Searo,* 466 Pa. 224, 352 A.2d 30 (1976) and cases cited therein; *Commonwealth v. Gibbs,* 366 Pa. 182, 76 A.2d 608 (1950); *Commonwealth v. Drum,* 58 Pa. 9 (1868), in *Commonwealth v. Crowson,* 488 Pa. 537, 543, 412 A.2d 1363, 1365 (1979).

This presumption was developed in recognition of the impossibility for the Commonwealth to meet its burden of establishing a requisite frame of mind without resort to circumstantial proof. Because a state of mind by its very nature is subjective, absent a declaration by the actor himself, we can only look to the conduct and the circumstances surrounding it to determine the mental state which occasioned it. *O'Searo* 466 Pa. at 236, 352 A.2d at 37.

While it is true that almost every other case in which specific intent was inferred from the use of deadly weapons upon the vital area of the bodies of victims contains other circumstances corroborative of such intent,[4] in this case, the jury could reasonably conclude from the facts presented that appellant possessed the specific intent to kill Hershey.[5] This is so, especially in light of the principle that no specific length of time is necessary before premeditation will be

**4.** *Cf. Commonwealth v. Thornton,* 494 Pa. 260, 431 A.2d 248 (1981) (After four hours of searching for victim, whom defendant knew, defendant approached victim with shotgun and from distance of five feet away shot him in back.); *Commonwealth v. McAndrews,* 494 Pa. 157, 430 A.2d 1165 (1981) (Defendant pressed muzzle of gun against victim's cheek and pulled trigger; victim was paramour of defendant; defendant fled); *Commonwealth v. Green,* 493 Pa. 409, 426 A.2d 614 (1981) (Wife inflicted multiple stab wounds on husband whom she suspected of being unfaithful); *Commonwealth v. Bishop,* 489 Pa. 96, 413 A.2d 1031 (1980) (defendant entered victim's grocery store with firearm, pointed gun at victim and fired three times) *Commonwealth v. Bricker,* 458 Pa. 367, 326 A.2d 279 (1974) (Defendant shot victim twice from two feet away, pushed victim from car and dragged body two hundred feet before it became dislodged.)

**5.** "This court has said that a willful, deliberate and premeditated killing is one where the actor had the specific intent to bring about the death of the victim." (citations omitted) *Commonwealth v. Meredith,* 490 Pa. 303, 416 A.2d 481 (1980).

found to have entered into a defendant's act of killing. *Commonwealth v. Thornton, supra,* at fn. 3.

■ In the instant case, it was established at trial that appellant, from a distance of between two and six feet, fired a pump action shotgun at Hershey, thereby critically injuring him. While appellant maintained that he feared for his own life and that the gun went off accidentally, the jury evidently did not believe him. Nevertheless, sufficient evidence was presented to enable the jury to find beyond a reasonable doubt that appellant had committed the crime of murder in the first degree.

Appellant further contends that the Commonwealth failed to prove beyond a reasonable doubt that he did not act out of self defense.

Where an accused raises a defense of self-defense, the burden of the prosecution is to prove beyond a reasonable doubt the killing was not done in self defense.... The Commonwealth sustains its burden if it proves any of the following: that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that [he] was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save [him]self therefrom; or that the slayer violated a duty to retreat or avoid the danger.

*Commonwealth v. Burns,* 490 Pa. 352, 354, 416 A.2d 506, 507 (1980) in *Commonwealth v. Watson,* 494 Pa. 467, 471, 431 A.2d 949, 951 (1981).

We have concluded, as did the lower court that there was ample support for the jury's rejection of defendant's contentions as to self-defense. As the court said in its opinion,

The elements of self-defense were not present and the jury could reasonably have concluded that the defendant could have avoided the encounter by (1) not stopping initially; (2) by remaining in the cab of his vehicle; (3) by not exiting with a weapon; or, (4) once outside the vehicle, avoiding the altercation by retreating. Moreover,

since Hershey was wearing slacks and a short sleeve pullover shirt, the jury also had ample basis for rejecting defendant's claim of a concealed weapon on the victim's person.

Therefore, the evidence presented did establish the lack of a self-defense evidence on appellant's part.

■ Appellant asserts the ineffectiveness of trial counsel for failing to take exception to the court's refusal to permit him to discuss the elements of the various degree of homicide in his closing argument to the jury. Closing arguments were not recorded in this case. Thus, the tenor of defense counsel's remarks cannot be reviewed from the record. It reveals only that the court interrupted defense counsel and asked him not to talk to the jurors about the elements of the various offenses as the court would do so later.

It is true, as appellant contends, that counsel is not compelled to refrain from any discussion whatever of applicable law, *Commonwealth v. Glenn*, 321 Pa. 241, 183 A. 763 (1936); *Commonwealth v. Renzo*, 216 Pa. 147, 65 A. 30 (1906) cited in *Commonwealth v. Gwaltney*, 479 Pa. 88, 387 A.2d 848 (1978). On the other hand, it is the responsibility of the trial judge to restrain improper conduct on both sides in order to insure a fair trial. Appellant has not explained how the lower court's intervention prejudiced him, except insofar as it deprived the jury of hearing trial counsel's recitation of the elements of the varying degrees of homicide. And, keeping in mind that the court did explain these elements to the jury twice we decline to find that counsel was ineffective in failing to preserve an objection to the court's action.

In applying the standard of review for claims of ineffective assistance to this contention, *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977), we find that for all of the reasons enumerated above, to have taken exception to the court's interruption would not have had arguable merit. Therefore, our inquiry ceases here. *Common-*

*wealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967).

■ Finally, appellant argues that his trial counsel was ineffective because he did not object to the court's charge on voluntary manslaughter. He contends that, in derogation of *Commonwealth v. Scaramuzzino,* 485 Pa. 513, 403 A.2d 82 (1979), the court failed to (1) inform the jury of its power to return a verdict of voluntary manslaughter, whether supported by the evidence or not. *Id.,* 485 Pa. at 518, 403 A.2d at 84. Our review of the court's charge persuades us that the court did include this element in its voluntary manslaughter charge.

That the jury may return a verdict of voluntary manslaughter, whether supported by the evidence or not, is contained in the following excerpt from the court's charge:

[T]he current state of the law under decisions of our higher courts in Pennsylvania does provide a jury with the option of returning a verdict of voluntary manslaughter even though a murder verdict would also be appropriate under your factual findings. This permits a jury latitude in those cases where a jury might elect to exercise such latitude.

Though a homicide may in fact be done with a specific intent to kill or with malice, the law has traditionally recognized that there may be certain factors which together mitigate the defendant's culpability and justify lowering the offense to voluntary manslaughter.

Because we find that the court's instruction adequately conveyed the law as challenged by appellant on voluntary manslaughter and jury verdicts, we cannot find that counsel was ineffective for failing to object to the charge, *Commonwealth v. Hubbard, supra.* As we commented above in footnote 2, the court did not instruct the jury that it could return a guilty verdict of voluntary manslaughter based on unreasonable self defense. However, since appellant has not objected to this omission either at trial or on appeal, this aspect of voluntary manslaughter is not included in our consideration.

As for appellant's remaining assertions of ineffectiveness of trial counsel, we are constrained to remand this case for an evidentiary hearing by the lower court.

The judgment of sentence is vacated and the case is remanded for a hearing consistent with this opinion. If the lower court determines that trial counsel was effective, it shall reinstate the sentence. If the court determines that counsel was ineffective, it shall grant appellant a new trial. We do not retain jurisdiction.

WICKERSHAM, J., files a concurring and dissenting statement.

WICKERSHAM, Judge, concurring and dissenting:

I concur in the majority opinion as far as it goes; I would not remand for an evidentiary hearing on the question of trial counsel's ineffectiveness since the reasons assigned therefor are palpable nonsense.