461 A.2d 208

COMMONWEALTH of Pennsylvania, Appellee,

v.

Bennie ANDERSON, Appellant.

Supreme Court of Pennsylvania.

Submitted April 22, 1983.

Decided May 27, 1983.

S. David Fineman (Court-appointed), Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Sarah B. Vanderbraak, Asst. Dist. Attys., Philadelphia, for appellee.

Before ROBERTS, C.J., NIX and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

LARSEN, Justice.

On February 25, 1979 at 3:10 a.m., defendant and two other males knocked on the door of a residence at 2833 West Diamond Street in Philadelphia. The second-floor of the residence was operated as a speakeasy by Mrs. Lorraine Rambert who was present at that time along with several of her children, grandchildren and a man named John Farrell.

Mr. Farrell went down the stairs to answer the knock on the door. Several members of the Rambert family testified that a man then came up the stairs with a shotgun in his

hand, followed by appellant who had grabbed Farrell around the neck and held a gun against his back, and a third male. The third man entered the second floor speakeasy rooms, warned everyone present not to move, and took or moved Mrs. Rambert's purse. Appellant, still holding Mr. Farrell around the neck, then followed the first man up the stairway toward the third floor. According to the witnesses, there were two shots and Farrell fell down the stairs, fatally wounded.

One of the witnesses saw appellant fire his weapon and saw a flash from the gun held by the man at the top of the stairs. Appellant was also wounded by one of the discharges. He stumbled down the stairs and into the street, where he received prompt assistance from a police officer who had been across the street in a patrol car and who called for a unit to transport appellant to a nearby hospital.

Appellant was charged with murder, robbery, criminal conspiracy and related offenses, and was tried in October, 1979 in the Court of Common Pleas of Philadelphia County. Appellant's defense was that he was an innocent bystander. Appellant testified that he had been at a party earlier that evening, had left the party to obtain some marijuana, and had met up with one Elijah Dennison and some other men who took appellant to 2833 West Diamond in an attempt to purchase the marijuana. Once inside, according to appellant, the other men pulled guns (to appellant's complete surprise), there was shooting and appellant was injured by the first shotgun blast. Appellant testified he had no intention of committing a robbery or of shooting anyone when he went to the speakeasy.

The jury disbelieved appellant's version of the events and returned a verdict of murder of the second degree, robbery, criminal conspiracy and possession of an instrument of a crime. Post-verdict motions were filed by trial counsel asserting only the standard "boiler-plate" allegations in support of a new trial (*i.e.*, challenges to the weight and sufficiency of the evidence). Additionally, appellant filed a *pro se* motion for a new trial and in arrest of judgment

which alleged the ineffectiveness of trial counsel, and sought the appointment of new counsel.

The lower court granted the *pro se* motion for appointment of new counsel who filed supplemental post-trial motions. New counsel represented appellant on May 6, 1980 at an evidentiary hearing held before the Honorable Theodore B. Smith, Jr., who was also the presiding judge at appellant's trial. On August 20, 1980, the post-trial motions were denied and appellant was sentenced to life imprisonment on the murder conviction and to lesser concurrent terms on the remaining convictions. Direct appeal was then taken to this Court.[1]

Appellant first argues that he was unduly prejudiced by certain remarks made by the prosecutor in his closing argument and that the court's curative instructions were inadequate to dispell the prejudice. We disagree.

During his closing, the prosecutor made the following remarks in commenting upon appellant's "innocent bystander" defense:

Now, what did [appellant] say? He took the stand. He didn't say I wasn't there. What does he tell you? Is it out of Grimm's? Is it out of Mother Goose? Where is it from? Notes of Testimony (N.T.) at 1011.

Trial counsel immediately objected. The trial court sustained the objection and rendered the following cautionary instructions to the jury:

The Court: I'll sustain the objection. You [the prosecutor] may not characterize the defendant's testimony in such a fashion, and the jury will disregard that characterization entirely, the suggestion that the defendant's testimony was out of some fairytale. You heard the defendant's testimony. It's to be treated like any other witness's testimony and may not be characterized in that fashion. Do not use such expressions again. And you will disregard that characterization entirely, ladies and gentlemen.

---

1. Jurisdiction was conferred on this Court pursuant to then in effect 42 Pa.C.S.A. § 722(1).

The Prosecutor: May I continue, sir.

The Court: Yes, with the admonition I have given you. N.T. at 1011–12.

Certainly, it is improper for a prosecutor to express a personal belief or opinion as to the truth or falsity of evidence of defendant's guilt, including the credibility of a witness. *Commonwealth v. Kuebler,* 484 Pa. 358, 399 A.2d 116 (1979) (where defendant's version of events was branded a "big lie"); ABA Standards for Criminal Justice, Standards Relating to the Prosecution Function § 5.8(b) (Approved Draft, 1971). However, it is equally clear that comments by the Commonwealth's attorney do not constitute reversible error unless the "unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Van Cliff,* 483 Pa. 576, 582, 397 A.2d 1173, 1176 (1979) (citations omitted). Moreover, whether this standard has been violated is, in the first instance, a determination within the trial court's discretion, to be reversed on appeal only upon abuse of that discretion. *Id.*

While the prosecutor's comments may have been improper, we cannot say that the trial court abused its discretion in finding that there was no fixed bias or hostility formed in jurors' minds as a result of the comments, especially in light of the immediate, emphatic instructions to the jury and admonition to the prosecutor.

■■■ Appellant next argues that he was unduly prejudiced by an improper leading question asked of him by the prosecutor. During cross-examination, the following colloquy took place:

Q. [BY THE PROSECUTOR]: What kind of a shotgun did the other man have?

A. [BY APPELLANT]: They were shotguns. I saw them. They was long. That's why I say they was shotguns. I remember that one and a brown one.

Q. By the way, Mr. Anderson, what is your nickname?

A. Gage.

Q. Okay. Gauge like in 12-gauge shotgun, right?

A. No, it's not.

DEFENSE COUNSEL: Objection, your Honor.

PROSECUTOR: Thank you, Mr. Anderson.

APPELLANT: Not a 12-gauge shotgun.

DEFENSE COUNSEL: I ask that that be stricken. That's very improper for the District Attorney to—

THE COURT: He means is it spelled the same way.

APPELLANT: No.

THE COURT: How do you spell your nickname?

APPELLANT: G–A–G–E.

THE COURT: Very well. I'll—

APPELLANT: Come with a friend of mine, his name—

THE COURT: He's explained. It's not spelled the same way at all. It's the General Gage of revolutionary time.

DEFENSE COUNSEL: That's still a very improper remark, your Honor.

THE COURT: No—you mean, what he said?

DEFENSE COUNSEL: What the District Attorney just said.

THE COURT: He asked him is it spelled the same way as gauge in shotgun and he has said no, it's spelled G–A–G–E, not G–A–U–G–E.

DEFENSE COUNSEL: G–U–A–G–E.

THE COURT: Are you quarreling with my spelling of gauge for shotgun? How would you spell it?

DEFENSE COUNSEL: G–U–A–G–E.

THE COURT: What did I say?

DEFENSE COUNSEL: G–A–U–G–E.

THE COURT: Excuse me. We won't get into semantics in spelling.

Very well, we'll recess.

(A luncheon recess was held.) N.T. at 958–60.

It is asserted that the prosecutor's question "Gauge like in 12-gauge shotgun, right?" was a question with no probative value designed only to bias the jury by suggesting that appellant was the sort of person who might use or be familiar with shotguns, and that the prejudice engendered by this question deprived appellant of a fair trial. Again, we disagree.

This Court stated in *Commonwealth v. Hoskins,* 485 Pa. 542, 555, 403 A.2d 521, 528 (1979):

We acknowledge that every improper and inflammatory leading question by a district attorney does not necessarily require a new trial. *Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975). Furthermore, the trial court has discretion in granting a mistrial, and instructions to the jury to disregard an improper and inflammatory question are adequate in many instances. However, we also acknowledge the effect of an improper and inflammatory leading question posed by a prosecutor "depends upon the atmosphere of the trial." See *Stoltzfus,* supra.

After reviewing the instant trial record up until the question which resulted in the mistrial request, (citation omitted), we conclude the "atmosphere of the trial" was such that the "unavoidable effect" of the improper and inflammatory leading question ... was to form in the minds of the jury bias and hostility ... and thus prevent an objective verdict.

In the instant case, the trial court acknowledged that, in retrospect, the prosecutor's question was probably a "heavy-handed attempt to point to the defendant as one habituated to the carrying of firearms, particularly in view of the non-evidentiary significance, otherwise, of whatever the nickname may have been." Lower court slip opinion at 10. Nevertheless, we agree with the trial court that the harm, if any, was de minimis. The atmosphere of this trial was a far-cry from the inflammatory trial in *Hoskins,* where irrelevant references to drug trafficking and defendant's Muslim religion were repeatedly injected into the trial by the prosecutor. Moreover, even the trial court in this case did not at

the time understand the prosecutor's question to be a veiled reference to appellant's proclivity to use shotguns, but instead viewed the question as merely directed at the spelling of the nickname "Gage". The ensuing colloquy surely dispelled any prejudicial notion a juror may have gathered from the passing reference to "Gauge, as in shotgun?" It cannot be said that the effect of this reference was to form bias or hostility in the minds of the jurors so as to prevent an objective verdict.[2]

■ Appellant's next contention is that the court erred in refusing to allow Sergeant Robert Snyder to testify for the defense. The offer of proof regarding Sergeant Snyder's testimony was that he would testify that Russell Rambert, a prosecution witness, had identified from a photographic array one of the other assailants who participated in the crime. The court excluded the testimony as irrelevant and cumulative. Given the Commonwealth's theory of the case—that appellant and two other men had participated in the robbery-murder[3]—and the testimony of several witnesses that there were three men (including appellant) involved in the crime, the profferred testimony was neither exculpatory nor relevant because it would *not* have tended to support the inference that appellant did not participate. *Commonwealth v. Colon,* 461 Pa. 577, 585–86, 337 A.2d 554 (1975) *and Commonwealth v. Garland,* 475 Pa. 389, 395–96, 380 A.2d 777 (1977). At best, the testimony would have placed a name on one of the other assailants but, as the lower court noted, this would not have affected appellant's guilt or innocence. N.T. at 913.

**2.** The record indicates that the lower court never made a ruling on the objection to this improper leading question. The Commonwealth argues that, since counsel did not pursue the objection to a final ruling or ask for a curative instruction, the issue has been waived. We decline to treat the issue as waived, however, for we believe the objection was sufficient to preserve the issue for appellate review.

**3.** Murder of the second degree, for which appellant was convicted, is a criminal homicide committed while the defendant was engaged as a principal or as an accomplice in the perpetration of a felony. 18 Pa.C.S.A. § 2502(b) (supp. pamphlet 1982–83).

■ It is also contended that appellant was deprived of the effective assistance of counsel in several particulars. We remain guided by the standards first articulated in *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 605–06, 235 A.2d 349, 352–53 (1967):

[C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis.

Moreover, counsel will not be deemed ineffective for failing to raise baseless or frivolous issues. *Commonwealth v. Arthur,* 488 Pa. 262, 265, 412 A.2d 498 (1980). It is only when the claim which has been foregone is of arguable merit that further inquiry must be made into the basis for counsel's decision not to pursue the matter. *Commonwealth v. Hubbard,* 472 Pa. 259, 278, 372 A.2d 687, 696 (1977).

■ With these standards in mind, we will address appellant's ineffectiveness claims *seriatim.* First, appellant claims counsel was ineffective in failing to request a mistrial when the prosecutor commented in his closing argument on appellant's version of the relevant events (i.e., the references to "Grimm's" and "Mother Goose"). In light of our prior finding that the trial court's cautionary instruction was quite adequate to eliminate any possible prejudice to appellant caused by these comments, a request for a mistrial would have been baseless and without arguable merit. Furthermore, trial counsel explained at the post-trial evidentiary hearing that he does not ask for a mistrial when he believes he is winning a case, which he so believed in this case. N.T. Evidentiary Hearing (E.Hrg.) at 35–36. Clearly, this demonstrates a reasonable basis for counsel's deliberate trial decision not to seek a mistrial. *Commonwealth v. McGrogan,* 449 Pa. 584, 586–88, 297 A.2d 456 (1972).

█ The second allegation is that counsel was ineffective in failing to seek a mistrial or to request immediate curative instructions when the prosecutor asked the improper leading question about appellant's nickname. Again, as we have seen, no harm came to appellant as a result of this comment and the colloquy between defense counsel and the trial court was tantamount to a cautionary instruction, perhaps even more effective. Accordingly, this claim is without arguable merit.

█ Third, appellant argues that counsel was ineffective in failing to conduct a proper investigation, specifically, in failing to interview certain witnesses whose names appellant claims to have given counsel. This Court has held that counsel's failure to investigate potentially meritorious defenses, and/or to interview witnesses whose testimony could prove beneficial and exculpatory to the defendant's case, can constitute ineffective assistance of counsel if no reasonable basis otherwise exists for counsel's failure. *E.g., Commonwealth v. Mabie,* 467 Pa. 464, 359 A.2d 369 (1976). However, to persuade a reviewing court that counsel's investigation was sufficiently deficient so as to warrant a new trial, an appellant must allege more than a bare assertion that counsel failed to interview "X, Y or Z" and their testimony would have been helpful, for claims of ineffectiveness cannot be abstractly reviewed in a vacuum. *Commonwealth v. Pettus,* 492 Pa. 558, 563, 424 A.2d 1332 (1981) and *Commonwealth v. Wallace,* 495 Pa. 295, 433 A.2d 856 (1981).

█ The witnesses whom counsel should have interviewed, according to appellant, include Sydney Williams, Robert Alexander and Leonard Washington. The first two could have testified only as to appellant's whereabouts *prior* to the homicide and could only have confirmed that appellant had been at a party earlier in the evening. Brief for Appellant at 20. Thus, their testimony would have been irrelevant as it would not have tended to prove or disprove appellant's guilt or innocence. *Commonwealth v. Colon, supra* at 461 Pa. 585, 337 A.2d 554, and counsel cannot be

deemed ineffective for failing to interview them.[4]  Similarly, Leonard Washington's testimony would have been to the effect that he had seen appellant stumble out of the speakeasy, had helped appellant to the police vehicle, that appellant did not have a gun at that time and that the witness had heard two shots after appellant left the house.  N.T.E. Hrg. at 68–80.  As with the testimony of appellant's prior whereabouts, Washington's testimony was also irrelevant and not exculpatory.  Also, neither Williams nor Alexander were called at the post-trial evidentiary hearing and, therefore, appellant failed to sustain his burden of proving how their testimony would have been beneficial.  *Commonwealth v. McKenna,* 498 Pa. 416, 421, 446 A.2d 1274 (1982).

■ Appellant also claims that counsel was ineffective for failing to interview Elijah Dennison and Jerome Williams.  These witnesses were not named in any of appellant's post-verdict or supplemental post-verdict motions for new trial and thus, this claim is waived with respect to these witnesses.  Moreover, as with Sydney Williams and Alexander, appellant did not call Dennison or Jerome Williams at the evidentiary hearing, and so appellant fails to sustain his burden of demonstrating that their testimony would have been helpful.  *Commonwealth v. McKenna, supra.*

■ Finally, appellant claims that the failure of counsel to interview "Anthony Spruill" and to subpoena him for trial constitutes ineffectiveness.  Spruill was called by appellant at the post-trial hearing.  The offer of proof was that this witness would testify as to a conversation he had with one Jerome Williams wherein Williams "indicated that he was the perpetrator of this crime and that Mr. Anderson had nothing to do with it."  N.T.E.Hrg. at 62–63.  The court sustained the Commonwealth's objection and refused to al-

---

4. Furthermore, counsel indicated that he *had* talked to "Wilbert" Alexander ("Robert" Alexander appears to be a mistake in names as "Wilbert" was identified in appellant's supplemental motions for new trial and at the evidentiary hearing) and that he had no record in his notes that appellant had told him about Sydney Williams.  N.T. Evidentiary Hearing at 50–53.

low Spruill to so testify. This ruling was correct and no ineffectiveness of trial counsel has been demonstrated.

In *Commonwealth v. Colon,* 461 Pa. 577, 337 A.2d 554 (1975), this Court recognized the "declaration against penal interest" exception to the hearsay rule, but noted that "it is not the statement that must be against interest, but the *fact stated.*" 461 Pa. at 583–84, 337 A.2d 554, quoting Wigmore, 5 Wigmore, Evidence § 1462, at 337. Accordingly, we held that "the fact stated in that portion of Hernandez's [Colon's accomplice] confession which exculpated any possible accomplices was not against interest and hence that portion was inadmissible." 461 Pa. at 584, 337 A.2d 554. Furthermore, that portion of Hernandez's statement which did state facts against penal interest (*i.e.,* that Hernandez committed the crime) was deemed inadmissible because it was irrelevant to the case. *Id.,* 461 Pa. at 585, 337 A.2d 554. In *Colon,* the prosecution had proceeded on an accomplice theory, *i.e.,* that both Hernandez and Colon had acted in concert to commit the burglary/homicide, "[t]hus Hernandez's statement admitting his role in the crime was not inconsistent with the Commonwealth's theory of the crime. As such, his confession did not meet the test of relevancy because it would not tend to make the inference that Colon did not participate in the crime more likely." *Id.,* 461 Pa. at 585, 337 A.2d 554. *See also Commonwealth v. Garland, supra.*

As in *Colon,* the portion of Sidney Williams' alleged declaration that he committed the crime is irrelevant; the portion that appellant had nothing to do with the crime is inadmissible hearsay. Again, counsel's ineffectiveness cannot be considered in a vacuum, *Commonwealth v. Pettus, supra,* and counsel cannot be deemed ineffective for failing to interview a witness whose testimony could not have been beneficial because it was not admissible. *Commonwealth v. Leonard,* 499 Pa. 357, 362, 453 A.2d 587, 589 (1982).[5]

---

**5.** Had claims of ineffectiveness been preserved as to Elijah Dennison and Jerome Williams, this same reasoning would be equally applicable to counsel's failure to interview them.

Even if Spruill's testimony might have been helpful, counsel had a very reasonable basis for not interviewing him—counsel's notes did not disclose the name of either Anthony Spruill or Jerome Williams. The notes of testimony from the evidentiary hearing disclose that the information given counsel regarding these as well as the other witnesses was sketchy, vague and confusing. No addresses or phone numbers were given counsel, nor, in some instances, were names given. N.T.E.Hrg. at 22–27, 37–55. For example, counsel was given the nicknames "Capone" (who turned out to be Leonard Washington) and "Smokey". N.T.E.Hrg. at 23–27. Counsel was not given the names "Leonard Washington" or "Sydney Williams", but was given the name "Leonard Williams". N.T.E.Hrg. at 52–53. Moreover, counsel did attempt to locate and interview witnesses despite the sparse data given him. He did, in fact, interview at least four witnesses whose names were given him by appellant. N.T. E.Hrg. at 22–24, 42–47. He also attempted to locate the one witness for which an address had been given, but to no avail. N.T.E.Hrg. at 46–48.

Appellant also argues counsel's ineffectiveness for failure to move to suppress two "impermissible, suggestive identifications of defendant, and articles of clothing taken from defendant." This argument is frivolous. Appellant sets forth no facts or reasoning to support his assertions that any identifications were "impermissible," nor does he indicate any facts or circumstances that would suggest a basis for suppression of a tennis sneaker matching one found at the scene of the crime. Not only are these claims of ineffectiveness asserted in a vacuum, *Commonwealth v. Pettus, supra,* but also, counsel had no reason to raise such issues given the "innocent bystander" defense and the circumstances of this case—appellant's presence at the speakeasy was *never* contested, nor could it have been as he was immediately found outside the residence having been shot during the incident.

Appellant also asserts counsel's ineffectiveness in failing to request a jury charge on voluntary or involuntary

manslaughter, and in failing to consult with appellant prior to making the decision not to request such charges. Counsel's decision not to request such charges was because such a tactic would have been absolutely inconsistent with the "innocent bystander" defense. N.T. 1087–1090. This decision was reasonably based and is clearly within the attorney's exclusive realm of trial strategy. *See, e.g., Commonwealth v. McGrogan,* 449 Pa. 584, 586–89, 297 A.2d 456 (1972) (decision whether or not to request charge on voluntary manslaughter within exclusive province of counsel) *and Commonwealth v. Morris,* 492 Pa. 565, 424 A.2d 1336 (1981) (same regarding request on involuntary manslaughter). Furthermore, counsel testified that he *had* consulted with appellant as to this decision after the jury was charged but before it retired to deliberate. N.T.E.Hrg. at 16–17.

■ Next, it is asserted counsel was ineffective in failing to pursue any pre-trial discovery with the district attorney's office or to file any pre-trial discovery motions. This assertion is baseless and, again, is made in a vacuum as appellant offers nothing to indicate how he may have been prejudiced by any lack of pre-trial discovery. The only remote suggestion of "prejudice" is that counsel was "surprised" by statements of two Commonwealth witnesses. However, counsel had complete opportunity to review the statements and utilized them extensively on cross-examination.

The last assertion of ineffectiveness is based upon counsel's alleged failure to enter into plea negotiations with the district attorney's office and to communicate any offers to negotiate to appellant. The record belies this claim as it supports the trial court's specific finding of fact that counsel *had* attempted to negotiate a plea, *had* received an offer and *had* communicated the offer to appellant who rejected it. Lower court slip opinion at 8; N.T.E.Hrg. at 28–29, 39–42.

■ Finally, appellant contends the court erred in failing to suppress a statement given by him to police officers while he was receiving treatment at the hospital. Primarily, this contention is founded upon the assertions that appellant was

in custody at the hospital and that the statement was involuntary because appellant had been in pain when he made it. The record of the suppression hearing completely supports the court's findings that appellant was not in custody at the time he made the statement (indeed, he was not even a suspect at the time) and that the statement was voluntary and the product of free, unconstrained choice. N.T. Suppression Hearing 90–91, 161–62. Moreover, it is incredible that appellant would assert error in this regard for the Commonwealth made no use whatsoever of appellant's statement until *after* appellant had first introduced it to buttress his version of the incident, thus waiving any arguments as to its admissibility.

For the foregoing reasons, the judgments of sentence are affirmed.

NIX, J., concurs in the result of this opinion.