479 A.2d 955

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Charlie Will CLEMMONS, Appellee.**

Supreme Court of Pennsylvania.

Submitted May 14, 1984.

Decided June 28, 1984.

Katherene E. Holtzinger, Deputy Dist. Atty., for appellant.

Marilyn C. Zilli, Asst. Public Defender, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

The appellee, Charlie Will Clemmons, was found guilty of murder in the first degree following a jury trial in the Court of Common Pleas of Dauphin County. Following the denial of his posttrial motions, appellee was sentenced to a life

term imprisonment. Represented by new counsel, appellee filed a direct appeal to the Superior Court challenging the sufficiency of the evidence and raising numerous ineffectiveness of counsel claims.

Reaching the merits of the sufficiency of evidence claims, the Superior Court, 312 Pa.Super. 475, 459 A.2d 1, found that the Commonwealth's evidence adequately supported appellee's first degree murder conviction.

As for the ineffectiveness of counsel claims, the Superior Court, without examining the colorableness of these allegations, vacated appellee's judgment of sentence and ordered an evidentiary hearing on these claims. Taking exception to this ruling, the Commonwealth petitioned this Court for allowance of appeal which was granted. For reasons elucidated below we reverse the order of the Superior Court.

The Commonwealth argues that it was incumbent upon the Superior Court to attempt to examine the merits of each ineffectiveness of counsel claim before ordering an evidentiary hearing. Had the Superior Court done so, the Commonwealth argues, it would have found an evidentiary hearing was not necessary, since the ineffectiveness of counsel allegations were devoid of merit. We agree.

In *Commonwealth v. Turner*, 469 Pa. 319, 365 A.2d 847 (1977), we stated:

Where the record on appeal clearly shows that there could have been no reasonable basis for the damaging decision or omission by trial counsel, then of course the judgment must be vacated and appropriate relief, such as allowing the filing of post trial motions or the ordering of a new trial, granted. Where, on the other hand, it is *impossible* to tell from the record whether or not the action of trial counsel could have had a rational basis, the appellate court will vacate the judgment, at least for the time being, and remand for an evidentiary hearing at which trial counsel may state his reasons for having chosen the course of action taken. *Neither of these remedies, however, is appropriate if from the record it is apparent that the actions claimed to constitute inef-*

*fectiveness were in fact within the realm of trial tactics or strategy.* (Emphasis supplied.)

*Id.,* 469 Pa. at 324, 365 A.2d at 849.

■ Consistent with these statements we today hold that where it is clear that allegations of ineffectiveness of counsel are baseless or meritless then an evidentiary hearing is unnecessary and the unfounded allegations should be rejected and dismissed. *Cf. Commonwealth v. Wade,* 480 Pa. 160, 389 A.2d 560 (1978) (Plurality opinion in which all but one claim of ineffectiveness of counsel were dismissed because it was clear from the record that such claims were without merit.)

■ With these principles in mind we now turn to the standard which controls once a counsel's ineffectiveness is placed at issue:

Our task in cases of this nature therefore encompasses both an independent review of the record ... and an examination of counsel's stewardship of the now challenged proceedings in light of the available alternatives ... We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record ... [T]he balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis.

*Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604–05, 235 A.2d 349, 352–53 (1967). (Citations and footnotes omitted.) Moreover, ineffectiveness occurs only where the alternative not selected "offered a potential for success substantially greater than the tactics used." *Commonwealth v. Badger,* 482 Pa. 240, 393 A.2d 642 (1978), quoting *Commonwealth ex rel. Washington v. Maroney, supra.* Finally, we presume that counsel is effective and the burden of establishing counsel's ineffectiveness rests

upon his client. *Commonwealth v. Dunbar*, 503 Pa. 590, 470 A.2d 74 (1983). This requires a showing by defendant that the act of omission or commission by counsel was arguably ineffective and the likelihood that he was prejudiced as a result thereby. *Commonwealth v. Wade, supra.* For as we have stated in *Commonwealth v. Anderson*, 501 Pa. 275, 461 A.2d 208 (1983), "claims of ineffectiveness cannot be abstractly reviewed in a vacuum."

■ One of the charges of ineffectiveness involves trial counsel's failure to pursue the possibility that the killing was accidental. The frivolity of this claim is highlighted by a brief summarization of the pertinent evidence presented by the Commonwealth.

The events of June 8, 1980, began in an aura of normalcy. A tractor trailer driven by the appellee was proceeding along Interstate 81, near Harrisburg. A small pickup truck driven by Dale Hershey, who was accompanied by his fiance, Rose Marie Swelfer, was also proceeding on Interstate 81. It was eight o'clock on a summer Sunday night. Ms. Swelfer testified that appellee's truck swerved in the direction of their pick up truck and forced them off the road. The Furies quick to scent incipient violence twitched their wings. They know well how men can make trifles reek with feckless ruin. Mr. Hershey was on the path to his grave; Mr. Clemmons to prison, for life. Mr. Hershey picked up his CB radio and vented himself to appellee. Both Mr. Hershey and appellee pulled off to the side of the road. Mr. Hershey's vehicle stopped several hundred feet behind appellee's truck. Mr. Hershey left his pickup and walked rapidly to the cab of the larger vehicle. Ms. Swelfer, who observed the entire incident, testified that as Mr. Hershey approached appellee words were briefly exchanged between the two when she saw appellee lift a shotgun point it at Mr. Hershey and fire a shot striking the victim in the lower neck area. Ms. Swelfer's version of the shooting was substantiated by Mr. Thomas Moore, a trucker who was driving by the scene when the shooting occurred, who

testified that the victim had been shot by appellee when his hands were in plain view.

In his own defense, appellee testified that he believed Mr. Hershey to be armed, became fearful and acted in self-defense only to have the gun misfire. The jury chose to disbelieve appellee's version of the events. Appellee was found guilty of first degree murder. It is not our function to say what the verdict might also have been; what the jury writes upon evidence that can support a verdict is beyond our powers to change. Words in the record are cold because they are frozen in place by the verdict. Words are simply words. They are given life only by those who speak them. The jury hears them. They are empowered to say what they mean in the context before them. They may accept none, some or all of the words.

Appellee claims that trial counsel's failure to call a ballistics expert to confirm the possibility of accidental discharge constitutes ineffectiveness. The problem with this claim is that the record clearly reveals that trial counsel fully explored the possibility of an accidental discharge. After the Commonwealth presented the testimony of the state police trooper, who examined the gun and testified that it would not have discharged without pulling the trigger, trial counsel elicited on cross-examination the fact that guns do accidentally discharge and that was a possibility in this case. Moreover, a good portion of appellee's testimony described how the gun had accidentally misfired, notwithstanding the fact that it was appellee's intention to fire a shot over the victim's head.[1] Thus, the question of accidental discharge was left to the jury and it simply chose to believe the Commonwealth's evidence. Consequently, because this contention lacks any merit, an evidentiary hearing is not needed for this claim.

Similarly unconvincing is the allegation claiming trial counsel's ineffectiveness for failure to explore the possibili-

1. On direct examination appellee testified that "I had intentions of firing over his head to let him know that there was a shell or whatever into (sic) the gun." (N.T. at 144.)

ty of an unlawful detention at the scene. Specifically, appellee claims that the first witness on the scene, Phillip J. Kockler, a retired state police officer, unlawfully detained him when he showed him his identification and told appellee not to leave the scene. Appellee asserts that Mr. Kockler's display of identification was tantamount to invoking his authority as a police officer.

▮▮▮▮ This argument is meritless for a number of reasons. First, appellee's own testimony refutes the allegation that he was detained against his will. After the shooting appellee testified that he "tried to get help ... [by] stop[ping] traffic along the roadway." This testimony was consistent with appellee's averment in his Petition for Release and Setting of Reasonable Bail when he pled that "On the 8th day of June, 1980, petitioner *voluntarily* remained at the scene of an alleged homicide and surrendered to State Police at the scene." Secondly, since Mr. Kockler was retired, his capacity was equivalent to that of a private citizen. Persons lacking police powers can detain an individual if they have personal knowledge of a felony. *See Commonwealth v. Gregg*, 262 Pa.Super. 364, 396 A.2d 797 (1979). In the instant case Mr. Kockler testified that he observed the two vehicles pull off the road and then proceeded to watch the victim alight from his vehicle and approach appellee's truck. After making a U-turn Mr. Kockler arrived at the scene only to discover the victim's motionless body, with a gunshot wound to the neck, lying on the shoulder of the road. Finally, even if we assume that Mr. Kockler was acting under the color of state authority by telling appellee to wait for police, his actions were entirely proper by virtue of 42 Pa.C.S. § 8953(a)(6)(c).[2]

**2.** Act of June 15, 1982, P.L. 512, No. 141, § 4, *as amended*, 42 Pa.C.S. § 8951 *et seq.* The pertinent provision reads in part:

Statewide municipal police jurisdiction

(a) General rule. Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing

■ Third among the ineffectiveness claims is trial counsel's alleged failure to locate witnesses who may have been favorable to the defense. Appellee, however, fails to provide the names and whereabouts of these witnesses, the substance of their testimony and how they would have appreciably strengthened his defense. Moreover, appellee does not allege that his trial counsel knew of the existence of the witnesses who purportedly should have been called. In this respect, appellee's case is similar to *Commonwealth ex rel. Washington v. Maroney, supra,* where this Court was confronted with a challenge to the trial counsel's stewardship on the grounds that counsel failed to call character witnesses to testify. We rejected that claim because there had been no showing that such witnesses ever existed. We further reasoned that absent a showing that the proposed testimony would have been helpful, counsel could not have been deemed ineffective. *Id.* 427 Pa. at 609–10, 235 A.2d at 355. Similarly, in *Commonwealth v. Oliver,* 280 Pa.Super. 274, 421 A.2d 719 (1980) the Superior Court declined to remand for a hearing on the issue of counsel's failure to call witnesses on the appellee's behalf or find counsel ineffective for failing to do so where the appellee did not identify the witnesses nor relate what testimony they would have given. *See also, Commonwealth v. Allen,* 501 Pa. 525, 462 A.2d 624 (1983); *Commonwealth v. Wade,* 501 Pa. 331, 461 A.2d 613 (1983); *Commonwealth v. Guest,* 500 Pa. 393, 456 A.2d 1345 (1983); *Commonwealth v. Hawkins,* 445 Pa. 279, 284 A.2d 730 (1971); *Commonwealth v. Blackwell,* 312 Pa.Super. 117, 458 A.2d 541 (1983). *Cf. Commonwealth v. Jennings,* 489 Pa. 578, 414 A.2d 1042 (1980) (Evidentiary hearing proper remedy to determine alleged ineffectiveness of counsel where counsel fails to obtain testimony of known alibi witness); *Commonwealth v. Sawyer,* 309 Pa.Super.

those functions within territorial limits of his primary jurisdiction in the following cases:

. . . . .

(6) Where the officer views an offense which is a felony, or has probable cause to believe that an offense which is a felony has been committed, and makes a reasonable effort to identify himself as a police officer.

72, 454 A.2d 1088 (1982) (Same). On the facts of this case appellee's claimed ineffectiveness on this issue lacks the required predicates upon which to order relief.

[8, 9] The next allegation of trial counsel's ineffectiveness is his failure to pursue the possibility of an unlawful one-on-one confrontation and identification of appellee by Ms. Swelfer. This claim overlooks two considerations. First, Ms. Swelfer personally observed the entire incident from the front seat of the victim's vehicle. Her identification certainly became credible when she testified that after the shooting appellee put down his gun and walked toward her indicating that he had no intention of harming her. Second, appellee identified himself to all on-the-scene witnesses claiming that he acted in self-defense and that the shooting was accidental. The identity of appellee was never at issue. *See, e.g., Commonwealth v. Caswell,* 316 Pa.Super. 462, 463 A.2d 456 (1983). Prompt, on-the-scene identification is not violative of one's constitutional rights. *Commonwealth v. Connolly,* 478 Pa. 117, 385 A.2d 1342 (1978); *Commonwealth v. Brown,* 462 Pa. 578, 342 A.2d 84 (1975); *Commonwealth v. Thomas,* 444 Pa. 436, 282 A.2d 693 (1971). The need for an evidentiary hearing on this issue is at best a mystery.

█ Another baseless claim of trial counsel's ineffectiveness is his alleged failure to impeach the Commonwealth's key witness, Ms. Swelfer, during trial with an alleged prior inconsistent statement made during the preliminary hearing. Again, the record refutes this claim. The only alleged inconsistent statement made by Ms. Swelfer was brought to the jury's attention by appellee's trial counsel. During the preliminary hearing, Ms. Swelfer testified that Mr. Hershey pulled out into the middle lane of traffic in order to cut-off appellee. At trial on direct examination, she simply stated that her fiance pulled into the middle lane of traffic. On cross examination trial counsel read to Ms. Swelfer that portion of her preliminary hearing testimony that differed from her testimony given on direct examination. Ms. Swelfer acknowledged her earlier testimony. Thus, trial counsel

did use the preliminary hearing as a means of impeachment. This is a classic hindsight evaluation of the record: that appellee would have perhaps impeached the witness in a different way or by a different style does not constitute ineffectiveness of counsel.

■■ The sixth allegation of ineffectiveness of trial counsel deals with counsel's failure to examine the possibility that the victim had an aggressive personality and that appellee was justified in fearing for his life. Appellee points to the fact that trial counsel failed to introduce as evidence the coroner's report which both confirmed the presence of alcohol in the victim's blood and described the victim's personality type as aggressive. Notwithstanding this omission, these facts were clearly brought to the jury's attention. On cross-examination trial counsel elicited from Ms. Swelfer that her boyfriend had been drinking earlier that day, and then he proceeded to question her about the amount of alcohol the victim had consumed.

■■ As for Mr. Hershey's aggressive personality, we note that evidence of a victim's alleged violent character has been allowed to show either that the victim was in fact the aggressor or to corroborate the appellee's knowledge that these violent propensities allegedly led him to reasonably believe that his life was in danger. *Commonwealth v. Amos*, 445 Pa. 297, 284 A.2d 748 (1971).[3] Here, however, it is undisputed that the victim was in fact the initial aggressor. The Commonwealth was forced to proceed on the assumption that Mr. Hershey provoked the vehicles into stopping and pursued a confrontation. Thus, there would have been no need to introduce the medical report for that purpose. As to corroborate appellee's knowledge of the victim's alleged violent character, this is clearly inapplicable. Up until their encounter on Interstate 81, appellee and the victim had never previously met. Nowhere in the record does appellee allege that he knew of the victim or his

3. Although the evidence sought to be introduced in *Amos*, dealt with the victim's felony convictions, as opposed to a medical report here, the reasoning for introducing the evidence is still the same.

supposedly aggressive personality at the time of the shooting. Thus, the medical report could not have served as a source of corroboration, because there was nothing to corroborate. *Commonwealth v. Horne,* 479 Pa. 496, 388 A.2d 1040 (1978).

Furthermore, the coroner's report was only cumulative evidence and of questionable value,[4] it would not have informed the jury of anything more than what it had already known: that Mr. Hershey displayed aggressive behavior by provoking the vehicles into stopping and getting out of his vehicle and approaching the appellee. Accordingly, the report's omission from trial had no bearing on the outcome of this case. Consequently, trial counsel's strategy of establishing the victim's aggressiveness through witnesses rather than a medical report cannot be said to have been unreasonable and against appellee's interests.

We have reviewed all of appellee's ineffectiveness of counsel claims,[5] and find them to be devoid of any merit so as to obviate any need for an evidentiary hearing. Accordingly, the Superior Court's order remanding the case for an evidentiary hearing is reversed and the judgment of sentence is hereby reinstated.

NIX, C.J., and LARSEN, J., concur in the result.

ZAPPALA, J., files a dissenting opinion.

4. The victim was dead on arrival. The coroner's conclusion was speculative at best. Moreover, the competency of the coroner to make such a determination is also questionable. The coroner's classification of the victim's personality as "aggressive" deals with the victim's mental and psychological makeup, an area of specialization which was beyond the coroner's field of expertise.

5. Appellee raises one other claim of ineffectiveness of counsel. Namely, whether counsel rendered ineffective assistance in allegedly failing to exercise his right to discovery as to Commonwealth witness Phillip Kockler. A review of Mr. Kockler's testimony convinces us that trial counsel was fully prepared for his testimony. Trial counsel's objections raised during Mr. Kockler's direct examination indicates that he knew precisely what Mr. Kockler would testify to and was successful in limiting Mr. Kockler's testimony to his personal observations of the incident.

ZAPPALA, Justice, dissenting.

I dissent.

I would affirm on the opinion of the Superior Court.