484 A.2d 802

**COMMONWEALTH of Pennsylvania**

**v.**

**Joseph Walter EGAN, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 24, 1983.

Filed Nov. 23, 1984.

Peter T. Campana, Williamsport, for appellant.

R. Michael Kaar, Assistant District Attorney, Milton, for Commonwealth, appellee.

Before WICKERSHAM, BROSKY and HOFFMAN, JJ.

WICKERSHAM, Judge:

Appellant Joseph Walter "Mike" Egan, a former Sunbury police officer, was arrested and charged with theft by unlawful taking, theft by receiving stolen property, theft by extortion, theft by failure to make required disposition, obstructing administration of law, and aiding in the consummation of a crime. A jury trial commenced November 12, 1981 before the Honorable Samuel C. Ranck. Judge Ranck accurately sets forth the evidence adduced at trial in his opinion, as follows:

On a date in mid-December, 1980, Kenneth Merrill and Mark Bolig burglarized the Mahanoy and Mahantango Telephone Co. in Herndon, Pennsylvania and removed approximately $31,000 in currency and coins. The two split the money evenly and each gave $2,000 to a friend, Ricardo. Merrill quickly spent his share of the proceeds,

primarily to support his drug habits. Bolig spent some of his share, returned another portion of it to Merrill, and eventually was left with $5,820.

The [Appellant] became aware of the burglary, although it had occurred in an area outside the jurisdiction of the Sunbury Police, and became suspicious of Merrill. After questioning, Merrill admitted his involvement to the [Appellant] and stated he no longer had any of the money. Merrill informed the [Appellant] that Bolig was also involved and that he probably still had some of the money.

On February 13, 1981, the [Appellant] and a U.S. Postal Inspector accompanied Merrill to a federal magistrate's office in Williamsport on unrelated federal charges that the [Appellant] was responsible for uncovering. At the office in Williamsport, Merrill placed a call to Bolig's home but was unable to speak with him. The group arrived back in Sunbury at approximately 4:00 P.M. Merrill testified that the [Appellant] accompanied him to his home and a second call was make to Bolig, this one by the [Appellant]. Arrangements were made for the two to meet at the Sunbury Police Department. The meeting took place between 4:30 P.M. and 5:00 P.M. Bolig brought with him a friend, one Marvin Ulrich, but Ulrich did not go into the room where Bolig and the [Appellant] met. At that time the [Appellant] confronted Bolig with his knowledge of the phone company burglary and stated that if Bolig would turn the remaining money over to him, no charges would be filed and one need find out about it. Bolig left with Ulrich to get the money [although it was in fact in the car all the time] and returned between 5:30 P.M. and 6:00 P.M. to turn it over. Ulrich counted the money while in the car and ascertained there were 291 twenty dollar bills, or $5,820. Bolig entered the police station, asked for the [Appellant], and when finally alone with him, handed over the money.

The evidence thus far related is based nearly entirely on the testimony of Bolig and Merrill. Several other

Commonwealth witnesses corraborated these events. Ulrich's testimony was substantially identical to Bolig's as to their movements and actions on February 13. Cheryl Reardon, the dispatcher on duty at the relevant times involved reinforced the testimony of these two. She stated that Ulrich and Bolig appeared at the police station on February 13 and asked for the [Appellant], that they left together, that Bolig returned later, and that he asked to see the [Appellant]. Sunbury Police Officer Michael Hogan testified that he saw the [Appellant] on February 13 at about 6:00 P.M. The [Appellant] was sitting in his car at the rear of the police station counting a large wad of bills.

The [Appellant] presented an alibi defense. He stated that after returning from Williamsport on February 13 with Merrill, he went into the police station and saw neither Merrill nor Bolig or Ulrich the rest of the afternoon and evening. He presented several witnesses to relate his movements late in the afternoon and early in the evening of that day, the substance of which was that he left the police station sometime after 5:00 P.M., and went to speak with a prospective customer of his demolition business, following which he went to arrange for the use of a truck to use for the demolition work. He then returned home after 8:00 P.M. that night.

Lower ct. op. at 2–4.

The jury began deliberations, to consider the six charges, at the conclusion of the trial on November 16, 1981. At approximately 5:45 p.m., the court met with the jury and all parties in response to a communication delivered to the court by the jury requesting additional information. The court gave additional instructions and at approximately 5:50 p.m., the jury again retired for deliberations. Shortly thereafter, the court was informed by the jury that they wished further instructions, and at approximately 6:30 p.m. a sidebar conference took place between the court and counsel and it was determined that the court give the jury the American Bar Association's Standard Instructions after they had been in deliberations four hours. The court called

the jury into the courtroom and gave them the ABA Standard Instructions concerning the method by which they were to reach a verdict. After a short colloquy and before returning the jury back into deliberations, the court declared a mistrial, finding that the jury was deadlocked.

The case was tried a second time on January 12, 1982 and appellant was convicted by a jury on all counts on January 14, 1982. Appellant filed a motion for a new trial alleging the verdict was against the weight of the evidence and that the district attorney made an improper remark during closing argument. Post-trial motions were denied in part and granted in part. The court arrested judgment on the sixth count charging appellant with aiding in the consummation of a crime. On May 13, 1982, appellant was sentenced on the remaining counts to a period of not less than two and one-half nor more than seven years imprisonment. This timely appeal followed.

Appellant raises the following issues on appeal:

1. Whether Appellant is entitled to be discharged because the trial court improperly declared a mistrial at the first trial on the charges pending against him before the jury reached a verdict, because the jury was supposedly unable to reach a verdict, where the record is devoid of showing that Appellant personally consented to the declaration of a mistrial and where the record is devoid of a showing of 'manifest necessity' to declare a mistrial?

2. Whether Appellant was denied the effective assistance of counsel during the proceedings in the court below?

Brief for Appellant at 3.

Appellant was represented at the first trial by Wallace Worth, Jr., Esquire and by Mr. Worth and Robert MaGee, Esquire at the second trial which commenced January 12, 1982. In this appeal, appellant is represented by Peter T. Campana, Esquire of Williamsport. The opinion filed by Judge Ranck on January 16, 1982, relating to post-verdict motions does not reach either of the issues raised in this appeal.

With particular regard to the allegations of ineffective assistance of counsel the following is submitted by appellant in his brief.

Appellant would submit that trial counsel was ineffective for the following reasons:

(a) in failing to file a motion to dismiss the charges prior to the second trial on double jeopardy grounds;

(b) in failing to seek sequestration of Commonwealth's witnesses, Kenneth Merrill, Marvin Ulrich, and Mark Bolig;

(c) in failing to use the prior criminal records of Commonwealth witnesses, Marvin Ulrich and Kenneth Merrill, for impeachment purposes;

(d) in failing to object to the introduction of the transcript of the tape recordings made of the conversation of April 13, 1981; and

(e) in failing to take exception to the Court's failure to instruct the jury on the "accomplice" or "corrupt source" instruction with regard to the testimony of Mark Bolig and Kenneth Merrill and/or failing to raise this issue on post-verdict motions.

Brief for Appellant at 22.

We understand that it is our responsibility to attempt to examine the merits of each ineffectiveness of counsel claim before ordering an evidentiary hearing. As Mr. Justice McDermott said in *Commonwealth v. Clemmons*, 505 Pa. 356, 479 A.2d 955 (1984):

As for the ineffectiveness of counsel claims, the Superior Court, without examining the colorableness of these allegations, vacated appellee's judgment of sentence and ordered an evidentiary hearing on these claims. Taking exception to this ruling, the Commonwealth petitioned this Court for allowance of appeal which was granted. For reasons elucidated below we reverse the order of the Superior Court.

The Commonwealth argues that it was incumbent upon the Superior Court to attempt to examine the merits of

each ineffectiveness of counsel claim before ordering an evidentiary hearing. Had the Superior Court done so, the Commonwealth argues, it would have found an evidentiary hearing was not necessary, since the ineffectiveness of counsel allegations were devoid of merit. We agree.

In *Commonwealth v. Turner*, 469 Pa. 319, 365 A.2d 847 (1977), we stated:

> Where the record on appeal clearly shows that there could have been no reasonable basis for the damaging decision or omission by trial counsel, then of course the judgment must be vacated and appropriate relief, such as allowing the filing of post trial motions or the ordering of a new trial, granted. Where, on the other hand, it is *impossible* to tell from the record whether or not the action of trial counsel could have had a rational basis, the appellate court will vacate the judgment, at least for the time being, and remand for an evidentiary hearing at which trial counsel may state his reasons for having chosen the course of action taken. *Neither of these remedies, however, is appropriate if from the record it is apparent that the actions claimed to constitute ineffectiveness were in fact within the realm or trial tactics of strategy.* (Emphasis supplied.)

*Id.*, 469 Pa. at 324, 365 at 849.

Consistent with these statements we today hold that where it is clear that allegations of counsel are baseless or meritless then an evidentiary hearing is unnecessary and the unfounded allegations should be rejected and dismissed. *Cf. Commonwealth v. Wade*, 480 Pa. 160, 389 A.2d 560 (1978) (Plurality opinion in which all but one claim of ineffectiveness of counsel were dismissed because it was clear from the record that such claims were without merit.)

With these principles in mind we now turn to the standard which controls once a counsel's ineffectiveness is placed at issue:

> Our task in cases of this nature therefore encompasses both an independent review of the record ... and an

examination of counsel's stewardship of the now challenged proceedings in light of the available alternatives ... We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record ... [T]he balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis.

*Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604–05, 235 A.2d 349, 352–53 (1967). (Citations and footnotes omitted.) Moreover, ineffectiveness occurs only where the alternatives not selected "offered a potential for success substantially greater than the tactics used." *Commonwealth v. Badger,* 482 Pa. 240, 393 A.2d 642 (1978), quoting *Commonwealth ex rel. Washington v. Maroney, supra.* Finally, we presume that counsel is effective and the burden of establishing counsel's ineffectiveness rests upon his client. *Commonwealth v. Dunbar,* [503] Pa. [590], 470 A.2d 74 (1983). This requires a showing by defendant that the act of omission or commission by counsel was arguably ineffective and the likelihood that he was prejudiced as a result thereby. *Commonwealth v. Wade, supra.* For as we have stated in *Commonwealth v. Anderson,* 501 Pa. 275, 461 A.2d 208 (1983), "claims of ineffectiveness cannot be abstractly reviewed in a vacuum."

At 505 Pa. at 361–362, 479 A.2d at 957–958.

We need proceed no further than the first claim of ineffectiveness of trial counsel "in failing to file a motion to dismiss the charges prior to the second trial on double jeopardy grounds." It is impossible to tell from the record whether or not the action of trial counsel could have had a rational basis in this instance. It is not apparent from the

record that the various actions claimed to constitute ineffectiveness were in fact within the realm of trial tactics or strategy. *Commonwealth v. Turner, supra.*

Accordingly, we will vacate the judgment, at least for the time being, and remand for an evidentiary hearing at which trial counsel may state their reasons for having chosen the course of action taken. This remand will also afford the trial court the opportunity to supplement his opinion for the purposes of this appeal and provide us with his analysis of the necessity for dismissing the first jury as well as his analysis of the allegations of ineffectiveness of trial counsel following the hearing which will be held.

Judgment of sentence is hereby vacated and this case remanded to the trial court for an evidentiary hearing at which trial counsel will state the reasons for having chosen the courses of action taken. If the court determines that counsel was ineffective, it shall grant appellant a new trial. If the court finds that double jeopardy attached following the declaration of mistrial, then it shall discharge defendant-appellant. *Commonwealth v. Owens,* 299 Pa.Super. 1, 445 A.2d 117 (1982). If the court determines that the mistrial was declared with manifest necessity and further determines that trial counsel was effective then it shall reinstate the sentence. Either party may appeal from such decision and we do not retain jurisdiction.