523 A.2d 304

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Christina LOBEL, Appellee.**

Supreme Court of Pennsylvania.

Submitted Oct. 22, 1986.

Decided March 23, 1987.

164

Gaele McLaughlin Barthold, Deputy Dist. Atty., for appellant.

O. Robert Silverstein, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from a memorandum opinion and per curiam order of the Superior Court 343 Pa.Super. 612, 494 A.2d 482, which affirmed an order of the Philadelphia Court of Common Pleas granting a new trial to the appellee, Christina Lobel, after Lobel had been convicted of two counts of theft by deception and two counts of criminal conspiracy. The basis for granting the new trial was a determination that trial counsel had been ineffective in absenting himself, and Lobel, from the courtroom during a portion of trial. The circumstances surrounding the claim of trial counsel's ineffectiveness were the following.

In a non-jury proceeding, Lobel and a co-defendant, Peter Candelori, were jointly tried on a number of charges arising from a fraudulent charitable solicitation scheme which Lobel and Candelori operated. Lobel was charged with two counts of theft by deception and two counts of criminal conspiracy. Candelori was charged with multiple counts of theft by deception, multiple counts of criminal conspiracy, and certain other charges related to the scheme. During their joint trial, Lobel and Candelori were shown by the Commonwealth to have utilized so-called "volunteers," who

were in fact paid for their services, to solicit for a ficticious charity.

Specifically, Candelori held himself out as "Bishop" of the "Holy Orthodox Christian Church," having purchased the title of "Bishop" from an out-of-state mail order firm. As such, Candelori controlled a guild of street solicitors, comprised mainly of handicapped persons, who called themselves the "Salvation Mission Army Workers." To these solicitors Candelori issued identification certificates, which the solicitors used to present an appearance of legitimacy, as the certificates indicated that the solicitations were being conducted on behalf of a church-related tax exempt organization. Candelori's solicitors were permitted to retain 60% of their collections, with the remaining 40% passing into Candelori's control. The so-called "church" over which Candelori presided, and for which the solicitors were ostensibly collecting funds, was a fictitious entity. It engaged in no charitable activities, and it listed as its address various private homes, an answering service, and a subsequently demolished building.

The solicitors working under Lobel's supervision were driven by Lobel to various shopping centers where they collected money in cans labeled "Salvation Mission Workers" and "Help the Handicapped." Lobel instructed the solicitors to say, if asked, that they were working for the Salvation Army. Lobel's solicitors were furnished with identification certificates, bearing "Bishop" Candelori's name, indicating that the solicitors were collecting for the "Salvation Mission Army Workers." Lobel's financial arrangement with the solicitors differed from Candelori's to the extent that Lobel retained 50% of all moneys collected, as opposed to the 40% that Candelori retained. Lobel also paid Candelori $3.00 per day for each collection can used. In addition, Lobel herself solicited and collected funds for the "Salvation Mission Army."

At trial, after evidence of the foregoing facts had been introduced, Lobel's trial counsel requested that the court excuse him, and Lobel, from attending the immediately

ensuing portion of the trial, because, according to the prosecutor, the remaining testimony to be presented in furtherance of the Commonwealth's case against Candelori would not make reference to Lobel. Upon the prosecutor's assurance that the upcoming testimony would refer only to Candelori, the court granted the request, whereupon Lobel and her trial counsel left the courtroom.

During this absence of Lobel and her trial counsel from the courtroom, the testimony of two witnesses was presented. One of these witnesses testified that he had worked for Candelori as a solicitor for the Salvation Mission Army Workers, and he further testified, as had earlier witnesses, that he had not observed any charitable or religious activities that could be attributed to the Salvation Mission Army. The witness stated that he recognized one of the identification certificates, of the type described supra., as being one that had been issued to him by Candelori. Earlier in the trial, before Lobel and her trial counsel left the courtroom, other solicitors had testified that this particular certificate, which included on its face the name of "Bishop" Candelori, was identical to the ones that they utilized while working for Lobel. Finally, the witness testified that Candelori had influenced his prior grand jury testimony, and stated that Candelori had asked him to go into hiding to avoid testifying at the instant trial.

The other testimony presented in the absence of Lobel and her trial counsel consisted of the grand jury testimony of another Salvation Mission Army solicitor who had worked for Candelori, the admissibility of this testimony having been stipulated by Candelori's counsel. The stipulated testimony indicated that the solicitor was not cognizant of any charitable or religious activities attributable to "Bishop" Candelori or the Salvation Mission Workers. The solicitor also stated that she obtained identification certificates from Candelori, and she identified one of the certificates that she had used. In addition, the solicitor testified that she did not know Lobel.

After the foregoing testimony had been introduced, and before Lobel and her counsel re-entered the courtroom, closing arguments were heard on the charges against Candelori. Immediately thereafter, Candelori was found guilty of theft by deception and criminal conspiracy, and, subsequently, Lobel and her counsel returned to the courtroom. Upon their return the case against Lobel continued as the Commonwealth introduced Lobel's testimony from a prior trial in which Lobel had been prosecuted for perjury. In that testimony, Lobel admitted having lied in her testimony before a grand jury investigating the instant solicitation scheme, and she further admitted to having solicited with collection cans labeled "Help Handicapped Children" and "Salvation Mission Army Workers" on various occasions, using identification certificates bearing the name of and furnished by "Bishop" Candelori. She further admitted that she transported others to solicitation sites, retained a 50% share of the others' collected monies, and that she paid Candelori $3.00 per collection can used. Lobel stated that the parceling out of the collected funds in this manner was done in accordance with an agreement and instructions put forth by Candelori. In addition, Lobel admitted that she never gave the collected funds to causes such as helping handicapped children or any other charitable use. Nevertheless, Lobel testified that she did not perceive anything wrongful in what she had done.

At the conclusion of this testimony, and after closing arguments had been made by Lobel's counsel, Lobel was found guilty of two counts of theft by deception and two counts of criminal conspiracy. Motions for a new trial were filed by trial counsel, asserting his own ineffectiveness, and, after these were heard by the court en banc, a new trial was granted on the ground that Lobel had been ineffectively assisted at trial when she and her counsel excused themselves from the courtroom during a portion of the Commonwealth's case.

An appeal was taken to the Superior Court, whereupon the order granting a new trial was reversed. Superior

Court, relying on *Commonwealth v. Fox*, 476 Pa. 475, 478, 383 A.2d 199, 201 (1978), remanded the case for appointment of new counsel on grounds trial counsel should have been disqualified from asserting his own ineffectiveness at the appellate stage in a case such as this, where counsel's ineffectiveness was not perceived to be apparent on the record. Based upon the record before it, Superior Court noted that "absolutely no evidence was admitted against [Lobel] during her absence," and that there was "no basis for the court en banc's conclusion that trial counsel's ineffectiveness was apparent on the record or that counsel's decision was 'incomprehensible and arbitrary.'" *Commonwealth v. Lobel*, 302 Pa.Super. 467, 471–472, 448 A.2d 1136, 1138 (1982).

Upon remand, however, the trial court again granted a new trial, based upon the very same claim of ineffectiveness that had been considered and addressed, as described above, by the Superior Court. Prior to granting the new trial, the trial court heard arguments from newly appointed counsel, but no evidentiary inquiry was conducted. Thus, the record before the trial court was the same as that which had already been reviewed by the Superior Court. An appeal was again taken to the Superior Court, yet this time the Superior Court affirmed the grant of a new trial, holding that it was unreasonable for counsel to have departed from the courtroom during trial proceedings. The instant appeal ensued.

The sole issue presented is whether trial counsel was ineffective in absenting himself from the courtroom during the portion of the Commonwealth's case in which certain testimony, recounted supra., was introduced that ostensibly related only to Lobel's co-defendant, Candelori. The test applicable to reviewing claims of trial counsel's ineffectiveness is well established:

[C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether

other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis. *Commonwealth ex rel Washington v. Maroney*, 427 Pa. 599, 604–605, 235 A.2d 349, 352 (1967). Further, counsel are to be presumed competent in the representation which they have afforded, and the burden is upon defendants to show that the representation they have received was deficient. *Commonwealth v. Miller*, 494 Pa. 229, 233, 431 A.2d 233, 235 (1981).

In the present case, Lobel's trial counsel has not testified on the record as to his reasons for seeking excusal of himself, and Lobel, from the courtroom. Thus, speculation as to those reasons necessarily arises, and the Commonwealth argues that counsel was pursuing a reasonable strategy of disassociating Lobel from her more culpable co-defendant, Candelori, who was being tried upon more charges than was Lobel, and that counsel was trying to demonstrate Lobel's lack of concern for her co-defendant and to show a schism between the two co-defendants. Showing such a disassociation between the two co-defendants, the Commonwealth argues, was a wise strategy designed to rebut the inference that the defendants were co-conspirators. Further, it is argued that counsel took little or no risk in making a departure from the courtroom, since the departure occurred only after the prosecutor announced that the testimony of the remaining two witnesses would relate only to Candelori. In addition to these justifications for counsel's action, there is another possible explanation for counsel's action that should be addressed.

A case such as this presents the disturbing possibility of built-in ineffectiveness claims. As stated in *Commonwealth v. Crowley*, 502 Pa. 393, 404, 466 A.2d 1009, 1015 (1983), "Trial and appellate court judges have long suspected the possibility of 'built-in' ineffective assistance by clever trial counsel." Without imputing any improper motive to

counsel in this case, and viewing solely the facts, it is clear that the effect of counsel's course of action may have been to gain for his client two chances at a favorable outcome. Specifically, by counsel's absenting himself and Lobel from portions of the trial that related to Lobel's co-defendant, a gain may indeed have been realized by having emphasized the distinction between Lobel's case and that of the arguably more culpable co-defendant. Yet, if that strategy failed, the record would nevertheless have been seeded with an ineffectiveness claim on which an assertion of entitlement to a new trial might be based. Thus, there was an arguable strategic basis for counsel's actions.

Granted, there is room to debate the likelihood of success associated with a tactic of emphasizing the distinction between the two co-defendants, particularly in a case such as this where the dramatic gesture of departing from the courtroom was employed in a bench trial rather than in a trial before jurors, in view of the fact that one might expect jurors to be more easily influenced by such dramatic tactics. Similarly, there is the question as to whether it was reasonable for counsel to rely upon the assurances of the prosecutor that the evidence to be introduced would not pertain to counsel's client. Of course, if it later appeared that the prosecutor had misrepresented the nature of the evidence to be introduced, counsel could reasonably argue for relief on grounds he had been deceived into departing from the courtroom. Examination of the record in this case, however, fails to reveal any indication of deceptive tactics on the part of the prosecution, and, indeed, none have been alleged. The evidence introduced in counsel's absence did, on its face, relate only to Lobel's co-defendant.

■ Although the record is devoid of testimony from counsel explaining the reasons for his actions, and for his having "recognized" his own alleged ineffectiveness soon after his client was found guilty, a recognition which permitted a convenient argument to be made for a new trial based upon his own ineffectiveness, it must be noted that counsel's options were very limited in this case. Any de-

fense would have been greatly limited, not only because of the strongly incriminating testimony that had been admitted against Lobel prior to Lobel's departure with counsel from the courtroom, but also in view of the fact that Lobel's prior testimony from the trial in which she had been convicted of perjuring herself before a grand jury was to be introduced. In that testimony, recounted supra., Lobel in effect admitted all the major elements of the fraudulent solicitation scheme for which she was being tried in the instant case, even though Lobel asserted that she did not regard her conduct as wrongful. Under such circumstances, counsel may have been pursuing the only trial strategy that he perceived to be available, by creating an appearance of disassociation between Lobel and the co-defendant and by laying the groundwork for a claim of ineffective assistance of counsel. Thus, it cannot be said that such a strategy was so lacking in reason that "in light of all the alternatives available ... no competent lawyer would have chosen it." *Commonwealth v. Hill,* 427 Pa. 614, 617, 235 A.2d 347, 349 (1967).

Lobel asserts in the instant appeal, however, that counsel's decision to leave the courtroom was not a matter of trial strategy, and that counsel's decision was based, perhaps, on other motives, such as a need to attend to pressing matters in another courtroom, a need to keep a doctor's appointment, or other reasons that are of an equally speculative nature. It is to be noted, however, that the burden is on the defendant to establish his claim of ineffectiveness, see *Commonwealth v. Miller,* supra., and if counsel's decision in this case were based upon an improper motivation, evidence of that motivation should have been introduced by the defense, through counsel's testimony, or otherwise, to support the claim of ineffectiveness.

■ Even assuming, *arguendo,* that counsel's actions were not based upon trial strategy, and that counsel's actions were not reasonable, relief is not warranted in an ineffectiveness of counsel context unless it is established that the defendant has likely been prejudiced by the actions

in question. *Commonwealth v. Clemmons,* 505 Pa. 356, 362, 479 A.2d 955, 958 (1984). See also *Commonwealth v. Weathers El,* 485 Pa. 28, 30, 400 A.2d 1295, 1297 (1979). We have reviewed the record in this case and agree with the Superior Court's earlier determination that, during counsel's absence from the courtroom, absolutely no evidence was admitted against defendant Lobel. The evidence admitted during the period in question, which has been summarized in detail supra., consisted solely of testimony as to the activities of co-defendant Candelori. There was not one instance in which Lobel was referred to as having been involved in those activities, or even as having had any association or contact with Candelori. In short, Lobel was not mentioned or alluded to in any way during the testimony, except for one instance. That instance, however, was helpful to Lobel's defense, for it consisted of a statement by one of Candelori's solicitors that the solicitor did not know Lobel.

In granting a new trial, the trial court concluded that, because this was a case involving a conspiracy theory, the factual and legal issues intertwining both defendants were potentially if not actually present at every level, and that for this reason counsel's continued presence in the courtroom would not have been superfluous even though the testimony being introduced referred expressly to Candelori alone. Further, the court concluded that counsel's absence had deprived Lobel of the right to confront and cross-examine adverse witnesses, reasoning that witnesses against Candelori were, in effect, witnesses against Lobel, and that such testimony solidified the links between the two co-defendants.

We have carefully examined the record, however, and find that none of the testimony in question refers to there having been any link between Candelori and Lobel. The only sense in which the testimony could be said to pertain to such a link is by inference, deriving from the fact that the testimony was largely repetitive of earlier testimony describing Candelori's methods of solicitation, and, since the

fact finder had already heard testimony regarding both Candelori's and Lobel's methods of solicitation, there was reinforcement for the obvious fact that there was a similarity in their methods that was more than coincidental. It had already been shown that both utilized the services of handicapped persons as solicitors, used collection cans bearing the same markings, split the collected funds with the solicitors, and used the same types of identification certificates which bore the name of "Bishop" Candelori.

One of the witnesses who testified in counsel's absence identified an identification certificate that had been issued to him by Candelori, and this was the same certificate that had been identified earlier in the trial, before counsel's departure, as being exactly the same as certificates that Lobel supplied to her solicitors. It is argued, therefore, that identification of this certificate established a crucial link between Lobel and Candelori, and that the failure of counsel to be present to cross-examine as to that certificate's identification was prejudicial. In short, it is alleged that this testimony, as well as other testimony elicited during counsel's absence from the courtroom, such as testimony to the effect that solicited funds were not channeled into religious or charitable applications, was highly prejudicial to Lobel.

We do not believe, however, that prejudice warranting a new trial can be claimed upon the facts presented. The allegedly crucial nature of the testimony presented during counsel's absence has been overstated by Lobel in an effort to gain a new trial, for the testimony challenged as prejudicial was, for the most part, cumulative with respect to testimony that had been presented prior to counsel's departure from the courtroom. Nevertheless, a claim of prejudice still might be sustained were it not for the fact that, in testimony at her trial upon charges of perjury, Lobel *admitted* every significant fact that is now alleged to have been established by adverse witnesses during counsel's absence. In Lobel's perjury trial testimony, recounted supra., Lobel admitted that she supplied her solicitors with

identification certificates which were furnished by and which bore the name of "Bishop" Candelori, that she parceled out the collected funds in accordance with an agreement and instructions set forth by Candelori, that she never applied the retained funds to religious or charitable causes, etc. In the face of these admissions by Lobel, it is inconceivable that any of the testimony admitted in counsel's absence could have been prejudicial, inasmuch as that testimony, if it can be taken to relate to Lobel at all, merely substantiated aspects of Candelori's operation that Lobel had already admitted to be true.

Thus, we believe Lobel has failed to establish that trial counsel's actions were ineffective, or that prejudice was incurred through those actions. In so holding, however, we do not wish to endorse the practice followed by counsel in this case, for, although counsel's strategy was not unreasonable and caused defendant no prejudice, the practice of counsel absenting himself from the courtroom is one that, in the usual case, would be fraught with risk. This is particularly so in the context of conspiracy cases, where the potential for intertwining factual and legal issues is great. Further, trial strategies that involve setting the stage for built-in ineffective assistance of counsel claims are to be looked upon with great disfavor. In the future, therefore, case by case experimentation in the area of courtroom absence by counsel during criminal trials shall be regarded as prohibited. Cf. *Commonwealth v. Kerpan,* 508 Pa. 418, 423–424, 498 A.2d 829, 832 (1985) (prohibition on experimental jury deliberation process).

Having determined that Lobel is not entitled to a new trial based upon the instant allegations of ineffective assistance of trial counsel, we reverse the order of the Superior Court which affirmed the trial court's order granting a new trial, and remand the case to the trial court for disposition of the remaining post-verdict motions.

Order reversed, and case remanded.

PAPADAKOS, J., joins this opinion and files a concurring opinion.

**PAPADAKOS, Justice, concurring.**

I join with the Majority but write separately to express my deep dismay at the trial judge's lack of judicial perception in permitting trial counsel and the defendant to absent themselves from the courtroom while the trial continued. No one can foresee what prejudice might occur to the defendant while he and his counsel are absent. This procedure is inexplicable to me and I believe it should be banned.