J. S64009/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JOSEPH JENNINGS, JR., | : | No. 402 MDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order, March 18, 2014,
in the Court of Common Pleas of Lycoming County
Criminal Division at No. CP-41-CR-0000342-2003

BEFORE:  FORD ELLIOTT, P.J.E., WECHT AND FITZGERALD,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED DECEMBER 21, 2015**

Joseph Jennings, Jr., appeals from the order filed in the Court of Common Pleas of Lycoming County which dismissed, without a hearing, his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.

The facts have been previously summarized by this court, as follows:

> Appellant and the victim initially met while helping Appellant's uncle and aunt move into their new home.  After developing a friendship through several phone conversations, Appellant and the victim decided to go out together on the evening of April 13, 2002.  The victim picked Appellant up at his home and they decided to go to several different bars where they consumed alcohol and met with friends.
>
> Appellant claims that the victim had too much to drink and smoked marijuana with him.  N.T., 1/23/04, at 389, 392.  However, while the victim

---

\* Former Justice specially assigned to the Superior Court.

testified that she did have several drinks that evening, she reported feeling fine and in control. N.T., 1/22/04, at 73, 82. The victim explained that she became "annoyed" when Appellant teased her for not smoking marijuana with him. *Id.* at 77. Near the end of the evening, as she had become bored and anxious to end the date, the victim claimed that she poured her drink out in the bathroom sink. *Id.* at 78-79. The victim testified Appellant spent most of the evening socializing with his friends, as she sat by herself at the bar, and claimed "mostly the whole evening . . . [I] pretty much knew that I wasn't going to go out with him again." *Id.* at 63, 76-80.

The victim and Appellant also gave conflicting stories about their romantic conduct that night. Appellant claimed the victim had previously promised to give him a "full body massage" and was affectionate with him that evening, kissing and dancing closely. N.T., 1/23/04, at 381. While the victim admitted that Appellant kissed her a few times during the evening, she denied that she or Appellant ever made sexually suggestive comments or conducted themselves in a like manner. N.T., 1/22/04, at 65, 69-73, 80-81, 83.

At the end of the date, Appellant asked to borrow a movie and followed victim into her apartment although she had never invited him to come in. *Id.* at 83-84. While the victim went to go check her phone messages, Appellant started watching the DVD in the living room. *Id.* at 84. When the victim returned, she noticed that Appellant was more intoxicated than she thought, observing him swaying to the music and talking in a jumbled manner. *Id.* at 85-86. When Appellant mumbled that the victim wanted to see him naked all night, the victim became angry and told Appellant to leave. *Id.* at 86. Appellant ignored the victim's response and tried to dance with her. *Id.* After the victim pushed herself away, Appellant walked into the victim's bedroom and collapsed on her bed. *Id.* at 89-90.

After the victim checked to make sure that Appellant was asleep, she left him on the bed, reasoning that it would be best if he could "sleep it off." *Id.* at 90. The victim changed into her strapless nightgown and admitted she was not wearing underwear at the time. *Id.* at 90, 153. As the victim saw that it was raining and Appellant would have to walk home, the victim nudged Appellant's shoulder and told him to sleep on the futon in her living room. *Id.* at 92-93.

After Appellant got out of the bed, the victim climbed under the covers from the opposite side of her bed. Appellant got back into the bed, kissing the victim's neck and shoulder. As she tried to pull away and told him to stop, Appellant continued and grabbed her left hip and breast. *Id.* at 95. The victim struggled to get away and told Appellant "this is me saying no." *Id.* at 96. Appellant pulled down the covers, pulled the victim's nightgown up, and undid his pants. *Id.* at 98. The victim testified that as Appellant was laying [sic] on top of her, he was able to penetrate her vagina with his penis. *Id.* Appellant proceeded to turn the victim over and had sexual intercourse in another position. *Id.* at 100. Appellant testified at trial that the victim consented to the sexual intercourse. N.T., 1/23/04, at 398.

After Appellant left, the victim sought comfort in her best friend, who testified at trial that the victim looked "disturbing . . . [as] her hair was a mess, her face was white, pale she looked like a deer in the headlights . . . [and] she looked like she had been crying." *Id.* at 306. The following morning, the victim told her mother what had happened and they subsequently went to the emergency room. N.T., 1/22/04, at 112-13. Nurse Cathy Brendle, a sexual assault nurse examiner (SANE), performed a rape kit on the victim and submitted her observations and findings to the police.

As a result, Appellant was arrested, brought to a jury trial, and convicted on one count of sexual

- 3 -

> assault and two counts of indecent assault.  The jury acquitted Appellant on a charge of rape.  Shortly thereafter, on April 8, 2004, the Honorable Nancy Butts sentenced Appellant to an aggregate term of 6-12 years in prison.

*Commonwealth v. Jennings*, 958 A.2d 536, 537-539 (Pa.Super. 2008) (footnotes omitted).

On September 27, 2004, appellant filed a direct appeal to this court. The appeal was dismissed for failure to file a docketing statement in compliance with Pa.R.A.P. 3517.  The appeal was reinstated by this court, but we found that appellant's issues were waived for failure to file a Rule 1925(b) statement.  Subsequently, appellant filed a PCRA petition, and on June 13, 2007, the trial court granted the PCRA petition and allowed appellant to file an appeal *nunc pro tunc*.  In an opinion dated September 9, 2008, we affirmed the judgment of sentence.  Appellant filed a petition for allowance of appeal to the Pennsylvania Supreme Court which was denied on April 1, 2011.

On March 15, 2012, appellant filed a *pro se*, PCRA petition.  The PCRA court appointed counsel, and an amended PCRA petition was filed on February 13, 2013.  (Docket #87.)  Appellant subsequently requested permission to represent himself.  A waiver of counsel hearing was held pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1988).  Although permission was granted, appellant decided to hire private counsel.  On November 14, 2013, counsel filed the amended PCRA petition which is at

- 4 -

issue here. (Docket #96.) Appellant argued, *inter alia*, that trial counsel was ineffective for failing to investigate and take statements from the following witnesses:

i. Mary Ungard. Ms. Ungard would have testified regarding a phone conversation which she had with the victim, wherein the victim admitted coercion was used to obtain her statement and that the police falsified her statement which was supplied to the Defendant in discovery.

ii. Amber Carrey. Ms. Carrey would have stated that she saw the Defendant entering his house shortly after the alleged rape and that he was dry. This statement would have impeached the victim's statement that the Defendant walked home in the rain.

iii. Scott Mogret. Mr. Mogret observed the victim and the Defendant at Peachy's Bar prior to the alleged rape and he would have testified that the victim appeared intoxicated and was acting in a friendly and intimae [sic] fashion with the Defendant.

iv. Keith Spong. Mr. Spong was a bartender who would have testified that the victim drank a Long Island Tea shortly before the alleged rape, which the victim denied.

v. Robert A. Donoto, D.O., F.A.C.G., who would have testified, in his expert medical opinion, it was inappropriate for a nurse to diagnose the cause of the redness around the victim's genital area.

Final amended petition for post-conviction collateral relief, 11/14/13 at 4-5.

Appellant requested a hearing pursuant to Pa.R.Crim.P. 908 and included in his petition a list of the witnesses who would testify, their addresses, and a brief summary of their proposed testimony. (*Id.* at 7-9.)

A conference was held on November 21, 2013, during which the PCRA court heard oral argument. On December 20, 2013, the PCRA court found that there were no meritorious issues or genuine issues concerning any material fact which warranted an evidentiary hearing. The PCRA court also noted that appellant "did not file affidavits/certifications signed by the witnesses." (PCRA court opinion, 12/20/13 at 7.) The PCRA court notified the parties that it intended to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907(a). Having received no response from appellant, the PCRA court dismissed the petition on March 18, 2014. (Docket #99.)

On appeal,[1] appellant raises the following issues:

> I. WHETHER THE PCRA COURT ERRED WHEN IT SUMMARILY DENIED THE PCRA CLAIMS AND DISMISSED MR. JENNINGS' PETITION WITHOUT CONDUCTING AN EVIDENTIARY HEARING?
>
> II. WHETHER THE PCRA COURT COMMITTED REVERSIBLE ERROR BY DISMISSING TWO OF MR. JENNINGS' PCRA CLAIMS FOR THE

---

[1] Appellant was not provided with a copy of the PCRA court's order dismissing his PCRA petition, so he was not apprised of his rights to appeal. Appellant, through new counsel, petitioned for and was granted the right to appeal the March 18, 2014 order ***nunc pro tunc*** by order dated February 6, 2015. (Docket #103.)

> ALLEGED FAILURE TO FILE CERTIFICATIONS BY POTENTIAL WITNESSES?
>
> III.    WHETHER THE PCRA COURT COMMITTED REVERSIBLE ERROR WHEN IT DETERMINED THAT MR. JENNINGS WAS NOT DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BY TRIAL COUNSEL'S FAILURE TO INVESTIGATE AND/OR CALL CERTAIN WITNESSES WHOSE NAMES WERE PROVIDED BY MR. JENNINGS PRIOR TO TRIAL AND WHOSE TESTIMONY WOULD HAVE BEEN EXCULPATORY TO THE DEFENSE?

Appellant's brief at 4.

Our standard of review for an order denying post-conviction relief is whether the record supports the PCRA court's determination and whether the PCRA court's determination is free from error. *Commonwealth v. Franklin*, 990 A.2d 795, 797 (Pa.Super. 2010). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Id.*

In his first and second issues, appellant argues that the PCRA court erred because it dismissed his PCRA petition summarily without holding an evidentiary hearing. He argues that the ineffective assistance of counsel claims in his PCRA petition had arguable merit and an evidentiary hearing was necessary to afford him the opportunity to present to the PCRA court testimony of several witnesses whose testimony would have made a difference in the case had it been presented to the jury. We will address appellant's first and second issues together.

There is no absolute right to an evidentiary hearing on a PCRA petition. *Commonwealth v. Barbosa*, 819 A.2d 81 (Pa.Super. 2003). "[W]here it is clear that allegations of ineffectiveness are baseless or meritless then an evidentiary hearing is unnecessary and the unfounded allegations should be rejected and dismissed." *Commonwealth v. Clemmons*, 479 A.2d 955, 957 (Pa. 1984); *Commonwealth v. Stanley*, 632 A.2d 871 (Pa. 1993). To avoid such a result, "counsel must set forth an offer to prove at an appropriate hearing sufficient facts upon which a reviewing court can conclude that trial counsel may have, in fact, been ineffective." *Commonwealth v. Pettus*, 424 A.2d 1332, 1335 (Pa. 1981). However, "[t]he controlling factor in determining whether a petition may be dismissed without a hearing is the status of the substantive assertions in the petition." *Commonwealth v. Weddington*, 522 A.2d 1050, 1052 (Pa. 1987).

To prevail on a claim of trial counsel's ineffectiveness for failure to call a witness, the petitioner must show: (1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness' existence; (4) that the witness was prepared to cooperate and would have testified on the petitioner's behalf; and (5) that the absence of the testimony prejudiced the petitioner. *Commonwealth v. Fletcher*, 750 A.2d 261, 275 (Pa. 2000). Trial counsel will not be found ineffective for failing to investigate or call a

witness unless there is some showing by the petitioner that the witness' testimony would have been helpful to the defense. **Commonwealth v. Auker**, 681 A.2d 1305, 1319 (Pa. 1996). "Failure of trial counsel to conduct a more intensive investigation or to interview potential witnesses does not constitute ineffective assistance of counsel, unless there is some showing that such investigation or interview would have been helpful in establishing the asserted defense." **Commonwealth v. Purcell**, 724 A.2d 293, 306 (Pa. 1999).

Here, the PCRA court reviewed the averments in the PCRA petition, and considered the proposed testimony of each witness as set forth by appellant. The PCRA court concluded that the absence of their testimony did not prejudice appellant. Specifically, the PCRA court concluded that the testimony of Amber Carrey, Scott Mogret, and Keith Spong would have merely impeached the credibility of the victim by calling into question her recollection about the details before or after the sexual assault. The PCRA court noted that testimony at trial had already been provided that differed from the victim's recollection. We agree with the observations of the trial court.

While the failure to introduce evidence that challenges a witness' credibility can be prejudicial, where the proffered testimony is merely cumulative to other impeachment evidence, trial counsel will not be

considered to be ineffective. *Commonwealth v. Small*, 980 A.2d 549 (Pa. 2009); *Commonwealth v. Harty*, 621 A.2d 1023 (Pa.Super. 1993).

The testimony of Amber Carrey would have been cumulative to the testimony of other witnesses presented at trial. Josh Paul testified that he observed the appellant at approximately 12:45 a.m. in front of appellant's house and that he was with Miranda Butler and Carrey; and when he observed appellant, he appeared to be dry, not wet, and did not appear to have just walked blocks in the rain. (Notes of testimony, 1/22-23/04 at 254-255.) Similarly, Butler testified that she was with Paul and Carrey, who drove her to her house; and when they arrived, she observed the appellant walking up to his house and that he was not wet. (*Id.* at 257-261.) Therefore, because Carrey would have testified as to the same matters as Paul and Butler, appellant failed to demonstrate that he suffered prejudice. The PCRA court was able to determine, based on the proffer, that appellant's ineffectiveness claim had no merit. An evidentiary hearing was unnecessary to present the actual testimony of Carrey.[2]

---

[2] Appellant argues that without hearing these witnesses' testimony, the PCRA court "merely surmised" that their testimony had no evidentiary value. However, we note that when requesting an evidentiary hearing, the PCRA petition must set forth, *inter alia*, the substance of testimony of each intended witness. Pa.R.Crim.P. 902(a)(15). This is to provide the PCRA court with the necessary information to determine if, from the facts alleged in the petition, an evidentiary hearing is necessary. The PCRA court did not "merely surmise" the testimony had no evidentiary value; rather, appellant failed to set forth facts from which the PCRA court could conclude that the testimony had evidentiary value.

Likewise, we agree with the PCRA court that the testimony of Scott Mogret would have been merely cumulative to other evidence established through other witnesses. It was unnecessary that the PCRA court hold an evidentiary hearing in order to arrive at that conclusion. Appellant claims that Mogret would have testified that before the assault he had observed appellant and the victim at Peachy's Bar and the victim appeared to be intoxicated and was acting in a friendly and intimate fashion with appellant. However, at trial, Ty Kimble testified that he saw the victim and appellant together on the evening in question and that they had a good rapport, that they were enjoying themselves, were touching each other, and that the victim was the aggressor. (*Id.* at 235-241.) Further, the victim readily admitted that she had a substantial quantity of alcohol to drink. (*Id.* at 129-143.) We wholly agree with the PCRA court that appellant failed to establish that there was a reasonable probability that the result would have been different had Mogret testified at trial.

Keith Spong, if called as a witness, would have testified that he was the bartender who prepared a Long Island iced tea which the victim drank. Appellant argues that this testimony would have contradicted the victim's testimony at trial that she did not drink the Long Island iced tea. Again, appellant has failed to demonstrate that this testimony, if presented to the jury, would have changed the outcome of the trial. This evidence was cumulative of other evidence, particularly the victim's admission that she

consumed a substantial quantity of alcohol. That fact was undisputed at trial. The PCRA court did not err when it rejected this issue without holding an evidentiary hearing.

Regarding the testimony of appellant's medical expert, Dr. Donoto, the PCRA court found that his testimony, if presented, would have been cumulative to the testimony of Cathy Brendle, the nurse who examined the victim. At trial, Nurse Brendle testified that the redness could have been caused by regular sexual relations. (*Id.* at 355-356.) She also testified that the redness could have been caused by irritation or infection. (*Id.* at 356.) According to appellant, Dr. Donoto would have testified regarding the victim's medical injuries and what may have caused them. Since this testimony was simply cumulative to testimony that was presented, appellant failed to demonstrate that he suffered prejudice from the failure to call Dr. Donoto.

Finally, with regard to the testimony of Mary Ungard, the PCRA court concluded that appellant failed to demonstrate that he was prejudiced by the absence of this witness. We agree with the PCRA court that appellant failed to establish that the outcome of the trial would have differed if Ungard had testified. According to appellant, Ungard would have testified that the victim stated to her that the police coerced the victim to fabricate the accusations against appellant and that the police falsified the victim's written statement. First, by all accounts, the victim approached the police to report the rape,

not the other way around. Moreover, the victim testified in detail at trial how appellant forced himself on her and that she did not consent to sexual relations with the appellant. The victim was extensively cross-examined by trial counsel. Any additional evidence attacking the victim's credibility would have been merely cumulative. The PCRA court did not err in denying an evidentiary hearing to present the testimony of Ungard.

In his final issue, appellant contends that the PCRA court erred when it required certifications from the actual witnesses. Technically, it is unnecessary to address this issue because we have already found that the PCRA court was justified in denying appellant's request for an evidentiary hearing and concluding, based on the averments in the PCRA petition and the trial transcript, that trial counsel was not ineffective for failing to investigate and present the testimony of these witnesses. However, we do wish to note, for the future benefit of counsel and the PCRA court, that contrary to the PCRA court's understanding, it is not necessary that the certifications required under Pa.R.Crim.P. 902(a)(15) be signed **by the witnesses** whose testimony will be elicited at the evidentiary hearing.

Where a petitioner requests an evidentiary hearing, the petition must include only a signed certification as to each intended witness; and the petitioner must also provide the witness' name, address, date of birth, and the substance of the proposed testimony. **Commonwealth v. Brown**, 767 A.2d 576 (Pa.Super. 2001). The certification requirement can be met by an

attorney or **_pro se_** petitioner certifying what the witness will testify regarding. **_Commonwealth v. Pander_**, 100 A.3d 626 (Pa.Super. 2014); 42 Pa.C.S.A. § 9545(d)(1); Pa.R.Crim.P. 902(a)(15). Instantly, the PCRA petition included the appropriate certifications. It was the substance of the petition, however, which was lacking.

Accordingly, having found no merit in the issues on appeal, we will affirm the order below.

Order affirmed. Appellant's application to strike the Commonwealth's brief as untimely is denied.[3]

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/21/2015

---

[3] **_See_** Pa.R.A.P. 2188. The penalty for an appellee's failure to file a timely brief is not to strike the brief. Rather, "[i]f an appellee fails to file his brief within the time prescribed . . . he will not be heard at oral argument except by permission of the court."

- 14 -